## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JUNGYOUN KIM** | |
| 4716 41ST Apt 3F Sunnyside, NY 11104 | |
| **JIN CHAE** | |
| 130 Abbot Ave Ist Fl, Palisades Park, NJ 07650 | Case No.: |
| **YUJIA SUN** | |
| c/o Michael E. Piston Attorney at Law, 225 Broadway Suite 307, New York, NY 10007 | |
| **SANJIB SAHOO** | COMPLAINT |
| 1820 154th Ave. NE  Apt. D231 Bellevue, WA 98007 | |
| | |
| Plaintiffs, | |
|     against | |
| | |
| **DEPARTMENT OF HOMELAND SECURITY,** Washington, D.C.  20528 | |
| | |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** | |
| 111 Massachusetts Ave., NW MS 2260 Washington, DC 20529-2260 | |
| Defendants | |

**1.** This complaint is brought by plaintiffs Jungyoun Kim, Jin Chae, Yujia Sun  and Sanjib Sahoo against defendants, Department of Homeland Security and United States Citizenship and Immigration Services (USCIS), for judicial review under the Administrative Procedure Act of the defendants' decisions in File Nos. EAC1690745705, EAC1790056753, EAC1690168976 and WAC1690582460, denying the plaintiffs' respective applications to change their nonimmigrant status to F-1.

**2.** As will be shown, these applications were all denied for a reason that is not only directly contrary to the plain language of the relevant regulation, but also represented an abrupt and unannounced change of USCIS policy which the plaintiffs had no reason to anticipate and were deeply prejudiced by.

**3**. Further, these applications were denied solely because of unilateral changes to plaintiffs program start date compelled by the "Student and Exchange Visitor" (SEVIS) system administered by the Immigration and Customs Enforcement agency within the Department of Homeland Security, despite its lack of any lawful authority to in fact require these changes.

4. Finally, in each of these cases  the defendants abused their discretion to grant the plaintiffs a change of nonimmigrant status despite plaintiffs' supposed failure to maintain a lawful nonimmigrant status until the date deemed necessary by the defendants by failing to even consider favorably exercising their discretion to grant the plaintiffs' purportedly untimely applications.

**5**. This being a civil action against the United States arising under the Immigration and Nationality Act, 8 U.S.C. § 1101 et. seq., and the Administrative Procedure Act, 5 U.S.C. § 701 et seq., both laws of the United States, original jurisdiction over this matter is vested in this Court by 28 U.S.C. § 1331.

**6**. Jungyoun Kim is a citizen and resident of the Republic of Korea who was lawfully admitted to the United States as an exchange visitor, and is now temporarily present in Sunnyside, New York.

**7**. Jin Chae is also a citizen and resident of the Republic of Korea who was lawfully admitted to the United States as an exchange visitor, and is now temporarily present in Palisades Park, New Jersey.

**8.** Yujia Sun is a citizen and resident of the People's Republic of China who was lawfully admitted to the United States as an exchange visitor, and is now temporarily present in Boston, Massachusetts.

**10**. Sanjib Sahoo is a citizen and resident of India who was lawfully admitted to the United States as a visitor for pleasure, and is now temporarily present in Bellevue, Washington.

**11.**The Department of Homeland Security is a department of the executive branch of government, residing in the District of Columbia, with ultimate authority for approving or denying applications for change of nonimmigrant status in the United States.

**12.** United States Citizenship and Immigration Services (USCIS) is an agency of the U.S. Department of Homeland Security residing in the District of Columbia, to which the Department of Homeland Security has delegated authority for approving or denying applications for change of nonimmigrant status in the United States.

**13**. A substantial part of the events or omissions giving rise to the claims contained herein occurred within the District of Columbia, as this action arises out of a

decision apparently made at a national level within the central headquarters of the defendants, that is the abrupt and unannounced policy of disregarding the plain language of USCIS regulations in adjudicating applications for change of nonimmigrant status to F-1.

**14**. Therefore venue is properly vested in this Court by 28 U.S.C. 1391(e)(1)(A) and (B).

## STATEMENT OF RELEVANT FACTS

.

**Jungyoun Kim**

**15**. On September 19, 2015, the plaintiff   Jungyoun Kim was admitted to the United States for duration of status as an exchange visitor ("J-1").

**16.** On September 12, 2016, Jungyoun Kim applied to the USCIS for change of nonimmigrant status to F-1.

**17**. This application was supported in material part by a Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status", issued by ASA College, indicating

that Jungyoun Kim had been admitted to study at that institution with a "program start date" of September 12, 2016.

**18**. On February 28, 2017, Jungyoun Kim was asked to submit documentation to establish that she had a residence abroad where she intended to reside at the expiration of her stay and documentary evidence to show that she currently had the funds available to pay for her tuition and living expenses for her first year of study. The evidence she submitted to USCIS satisfied the residence abroad and financial issues.

**19**. On June 6, 2017, Jungyoun Kim was sent a Request for Evidence and informed that she should submit an additional Form I-539 application to extend her J-1 status or depart the United States and apply for an F-1 visa at a U.S. Consulate.

**20**. Jungyoun Kim submitted an additional Form I-539, together with the required $370 filing fee.

**21**. However, on August 8, 2017 the USCIS issued a decision admitting that its own advice to Jungyoun Kim to apply for an extension of stay was wrong because "J-1 exchange visitors are admitted for duration of status and are not eligible for an

extension of stay", a fact which did not prevent it from pocketing her $370 filing fee.

**22**. The decision went on to assert that "You must maintain your current J-1 exchange visitor status up to 30 days prior to your program start date to be eligible to change your status to F-1, per the allowable grace period. Your J-1 status expired on October 20, 2016 (includes grace period). The initial SEVIS Certificate of Eligibility submitted on your behalf lists your program start date as September 12, 2016. On June 26, 2017, the program start date was deferred to August 17, 2017. There is a gap in your authorized stay in the United States that exceeds 30 days. Therefore, your application is denied."

**23**. Upon information and belief, the change to Ms. Kim's program start date mentioned in the decision was forced upon ASA College by ICE's SEVIS system, in that if it failed to so defer her start date, the SEVIS system itself would have automatically terminated Ms. Kim's record in the system (because her change of status to F-1 had not yet been approved by her prior program start date) which, as will be seen below, would also be used by USCIS as an excuse for denying a similarly situated plaintiff's change of nonimmigrant status to F-1.

**Jin Chae**

**24**. On February 19, 2016, Jin Chae was admitted to the United States as a J-1 nonimmigrant exchange visitor.

**25.** On January 9, 2017, she filed a Form I-539, Application to Extend/Change Nonimmigrant status, to change her nonimmigrant status to F-1, supported by a Form I-20 issued by ASA College with a program start date of January 17, 2017.

**26**. On July 31, 2017 the USCIS issued a decision denying this application because, upon information and belief, the SEVIS system operated by Immigration and Customs Enforcement compelled ASA College to change her program start date in the SEVIS system to June 13, 2017, solely because the USCIS had not approved her change of status by the January 17, 2017 program start date indicated on her Form I-20, and this new start date was more than 30 days after her J-1 status had expired.

**Yujia Sun**

27. On August 4, 2015, the plaintiff, Yujia Sun was admitted to the United States for duration of status as an exchange visitor ("J-1").  She maintained that status by working as an au pair until her exchange visitor program expired on August 3, 2016.

29. Meanwhile, on April 4, 2016 she filed a motion to change her nonimmigrant status to student (F-1). This motion was supported by, among other things, a Form I-30 "Certificate of Eligibility for Nonimmigrant Student Status", issued by ASA College, indicating that Ms. Sun had been admitted to study at that institution with a "program start date" of June 14, 2016, over a month and a half before her exchange visitor program  ended.

**31**. On May 24, 2016, the USCIS notified Ms. Sun of its intent to deny her application due to purported missing documentation regarding ASA College's eligibility to issue Forms I-20 for F-1 academic student status, proof that she maintained a residence in China,  and proof that she was not subject to the two-year foreign residency requirement of 8 U.S.C. 1182(e).

**32**. In a decision dated July 21, 2016, the USCIS admitted that Ms. Sun had demonstrated her eligibility for F-1 academic student status, that she was maintaining a residence abroad and that she had funds to study in the U.S., but nevertheless denied her application on the grounds that she was subject to the two-year foreign residence requirement of 8 U.S.C. 1182(e).

**33**. Upon information and belief, this decision caused the SEVIS system to automatically cancel her student registration and made it impossible for her proposed school to reverse it.

**34**. On August 22, 2016 Ms. Sun filed a timely motion to reopen and/or reconsider this decision supported by evidence that she in fact was not subject to the home residence requirement of 8 U.S.C. 1182(e).

**35**. Nevertheless, on September 28, 2017, the USCIS issued a second decision again denying Ms. Sun's application for adjustment of status, this time on the grounds that the "Form I-20, certificate of eligibility for nonimmigrant student status, that you submitted lists your program start date as August 10, 2017, however your record is currently canceled. Your nonimmigrant status expired on August 22, 2017 which is more than 30 days before your new potential program start date.… The request to change your nonimmigrant status is denied because you failed to maintain your nonimmigrant status within 30 days of the program start date."

**Sanjib Sahoo**

**36**. Sanjib Sahoo was admitted to the United States on approximately March 23, 2016 as a visitor for pleasure. He was granted a period of authorized stay valid until September 21, 2016.

**37**. On August 11, 2016, he filed an application to change nonimmigrant status in the United States to student (F-1) which was assigned File No. WAC1690582460 by the USCIS. This application was supported by, among other things, a Form I-20, Certificate of Eligibility For Nonimmigrant Student Status, to attend Edmonds Community College which indicated that his program start date was September 11, 2016.

**38**. During the pendency of this application, at the instructions of USCIS, Sanjib Sahoo successfully  applied twice to extend his visitor status, the final extension expiring on September 21, 2017.

**39**. At no time did Sanjib Sahoo request that his program start date be changed to another date.

**40.** Upon information and belief, Edmonds Community College changed Mr.

Sahoo's  program start date in the SEVIS system one or more times because had it

failed to do so the system itself would have terminated Mr. Sahoo's registration

and/or compelled Edmonds Community College to terminate it.

**41**. It is USCIS policy to treat an applicant for change of nonimmigrant status to F-1

whose registration in SEVIS has been terminated as ineligible for that change as is

evidenced by its denial of Yujia Sun's application for change of nonimmigrant

status as mentioned above.

**42**. On November 9, 2017, the USCIS denied Sanjib Sahoo's application for change

of nonimmigrant status because:

> Title 8 of the Code of Federal Regulations (8 C.F.R.) § 248 .1 (b) states, in
> pertinent part:
> A change of status may not be approved for an alien who failed to maintain
> the previously
> accorded status ...
> 8 C.F.R. § 214.2(f)(5) states, in pertinent part:
> (i) General ... An F-1 student may be admitted for a period up to 30 days
> before the indicated
> report date or program start date listed on Form I- 2 0 ...
> Similarly, USCIS may grant a request for a change of nonimmigrant status to
> that of an F-1 academic student effective 30 days before the program start
> date listed on your Student and Exchange Visitor Information System
> (SEVIS) record. This 30-day period constitutes a "period of authorized stay"
> and not an actual "status."

12

Therefore, an applicant's nonimmigrant status cannot expire more than 30 days before the program start date.

Your "B" nonimmigrant visitor status expired on September 21, 2017. Review of your SEVIS record shows that your F-1 program date is currently December 26, 2017, more than 30 days after your "B" nonimmigrant visitor status expired.

…

A search of USCIS databases does not reveal any other application filed by you or on your behalf that would _extend your nonimmigrant status to within 30 days of the anticipated start date of your classes. Therefore, you cannot maintain a valid nonimmigrant status up to 30 days before the F-1 program start date and are not eligible for the requested change of status. As such, USCIS must deny this application.

## COUNT I

**43**. 5 U.S.C. § 706 provides in relevant part that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
> **…**
> - **(2)** hold unlawful and set aside agency action, findings, and conclusions found to be--
>   **(A)** arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

**44**. The USCIS's decisions denying each of the plaintiffs' applications for change of nonimmigrant status was not in accordance with law in that it was premised upon plaintiffs' program start date (or lack thereof) as set forth in the SEVIS system, rather than on form I-20 as provided by 8 CFR § 214.2(f)(5) (January 4, 2016).

37. The purpose of the regulations, like statutory provisions, is evidenced by the words chosen by the Attorney General (or, where applicable, the Secretary of Homeland Security). See *Matter of Artigas,* 23 I&N Dec. 99, 100 (BIA 2001). "This Board and the Immigration Judges 'must give effect to the unambiguously expressed intent' of the Attorney General." *Id.* (quoting *Chevron, U.S.A., Inc.* v. *Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)).

**45**. Therefore the expiration of the nonimmigrant status of each of the plaintiffs was well within 30 days of the program start dates indicated on their forms I-20 and therefore they were all qualified to be granted a change of nonimmigrant status to F-1 under the plain language of 8 CFR § 214.2(f)(5)(i).

**46.** 8 CFR § 214.2(f)(5) is nothing if not unambiguous. It is the date on which the plaintiffs' Forms I-20, and not in the SEVIS database, that dictates their program start date for determining whether they were maintaining status up to 30 days before that  date and so eligible to enter the U.S. in F-1 status, or change their status in the U.S. to F-1.

**47.**The USCIS's decisions denying each of the plaintiffs' applications for change of nonimmigrant status because their nonimmigrant status expired more than 30 days before their SEVIS system date (at the time USCIS adjudicated their application)

was not in accordance with law because there is simply no requirement that an applicant for a change of nonimmigrant status be maintaining a lawful nonimmigrant status within 30 days on the program start date contained in his "SEVIS record", and any such purported requirement is directly contrary to the plain language of 8 CFR 214.2(f)(5)(i).

**48.** Further, it was only USCIS's action in either a) delaying adjudicating the plaintiffs' applications for change of nonimmigrant status or b) erroneously denying it (in the case of Ms. Sun) which caused the SEVIS system to change or terminate the plaintiffs' program start date. To allow the USCIS to deny an application due to its own delay and/or incompetence is exactly the type of absurdity to be avoided in the construction of statutes. *See Griffin v. Oceanic Contractors, Inc*., 458 U.S. 564, 575 (1982) "[I]interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). We cannot ignore the plain meaning of the statute which results in a consistent and rational statutory scheme in favor of a reading that is arbitrary and unjust." *Lockhart v. Napolitano*, 573 F.3d 251, 260-61 (6th Cir. 2009).

**49**. Finally, it was the internal operation of the Immigration and Customs Enforcement's (ICE) SEVIS system which, without any legal authority whatsoever,

forced the Designated Student Officers of the plaintiffs' respective universities to change the plaintiffs' program start date or face automatic termination of the plaintiffs' files in the system or, in the case of Ms. Sun, to automatically terminate it merely because of its own erroneous denial of her application for change of status. It would also be absurd to permit the USCIS, an agency within the Department of Homeland Security (DHS) to deny an application solely because of actions compelled by the actions of ICE, another DHS agency.

**50**.Accordingly, the USCIS's decisions denying the plaintiffs' changes of nonimmigrant status to F-1 was not in accordance with law as well as arbitrary and capricious and should be held unlawful and set aside by this Court.

WHEREFORE the plaintiffs request that this court find that the USCIS's decisions in File Nos. EAC169075705, EAC179005675, EAC1690168976 and WAC1690582460 denying the plaintiffs' applications for change of nonimmigrant status to be unlawful and set them aside as not in accordance with law and direct the USCIS to issue a new decision in each matter in accordance with is applicable regulations and other law.

## COUNT II[1]

**52**. USCIS made what appears to be an agency wide decision sometime in the beginning of 2016 to disregard the plain language of 8 CFR § 214.2(f)(5)(i) which provides that "(a)n F-1 student  may be admitted  for a period  up to 30 days before  the indicated report  date or system  start date listed on **Form I-20** ..." and instead read it to say "(a)n F-1 student  may be admitted  for a period  up to 30 days before  the indicated report  date or system  start date listed *in SEVIS*" (emphasis supplied).

**53**. The USCIS had previously interpreted this regulatory language according to its actual wording since its promulgation on December 11, 2002.

**54**. For example pronouncements from both the USCIS's Vermont Service Center (VSC) and the California Service Center (CSC) from prior to 2016 confirm that adjudicators would previously rely on the initial program start date on the I-20 when adjudicating a change of status to F-1 application where the program start date was deferred. The minutes (on USCIS letterhead) from the August 20, 2009 VSC stakeholder meeting include the following Question and Answer:

Under SEVP policy, a school is instructed to defer the  program start date in

---

[1] This count does not pertain to Yujia Sun or Sanjib Sahoo.

SEVIS if it appears the change of status will not be approved before the program start date as originally set. NAFSA would like to confirm that the change of status application remains approvable after subsequent deferrals of the start date in SEVIS pursuant to this SEVP policy, provided the applicant's immigration status at the time of filing was valid to at least 30 days before the program start date on the I-20 initially submitted in support of the application for change of status. Response: If otherwise approvable, a change of status will remain approvable regardless of subsequent deferrals of the program start date provided that the applicant's status at the time of filing was within at least 30 days of the program start date indicated on the initial I-20.

**55.** In addition, minutes (on USCIS letterhead) from the May 6, 2009 CSC

stakeholder meeting state:

This is a follow-up item to Question 9 from our General Meeting on February 25, 2009. We asked whether the start date of the course of study as indicated on the Form 1-20 must be on or before the expiration of the current status (i.e. B-2) and CSC responded that the start date of the course should be on or before the expiration of status. The regulations at 8 CFR §214.2(f)(5)(i), defining "duration of status" state "An F-I student may be admitted for a period up to 30 days before the indicated report date or program start date listed on Form1- 20." AILA urges CSC to reconsider its answer, and to conclude that, consistent with the 30- day window provided by 8 CFR §214.2(f)(5)(i), a change of status to F-1 may be approved where the intended start date for the course of studies will commence no more than 30 days after the expiration of the period of authorized stay held by the alien at the time of the filing of the request to change nonimmigrant status. (Emphasis added). Response: If the requested start date is within 30 days of the previous status expiration date, this would not be cause for denial of the application.

**56.** Finally the American Immigration Lawyers Association (AILA) (the nation's

largest association of immigration lawyers) has stated that regarding changes of

status to F-1 due solely to changes in the program start date in SEVIS, that:

Prior to the spring of 2016, AILA received no reports from members who had

received denials of this nature. After receiving initial reports of denials in spring 2016, AILA posted a "call for case examples" to the general membership. We received more than 100 cases in response, the earliest of which had been denied in February 2016. This response, along with the above minutes, clearly indicates a shift in policy.

**57.** At no time has the USCIS made a public announcement of this change of policy.

**58.** Therefore even in the unlikely event that the USCIS's disregard of the plain language of 8 CFR § 214.2(f)(5)(i) was somehow a reasonable interpretation of the same, it is unenforceable against the plaintiffs because USCIS failed to notify them with ascertainable certainty under what circumstances they must extend their nonimmigrant status while an application for change of nonimmigrant status to F-1 is pending.

**59**. No applicant for a change of nonimmigrant status to F-1 nonimmigrant could be expected to read the plain language of 8 CFR § 214.2(f)(5)(i) and understand that it was not enough that he maintain a valid status to within 30 days of his program start date on form I-20, but that he was instead required to maintain a valid nonimmigrant status until within 30 days of the program start date in "SEVIS", particularly when he wasn't aware even that the SEVIS program start date was being changed by his university ( even though this was derogatory information which the USCIS was required to  inform him of prior to making a decision. 8 CFR

§  103.2(b)(16)(i) ) and also in light of the USCIS's over decade long history of enforcing the regulation as it was written, which only silently changed after his application was filed.  *See, e.g.  GE Co. v. OSHRC*, 583 F.2d 61, 67-68 (2d Cir. 1978) ("Simply put, to apply this standard to the surface here in question would go too far it would be inconsistent with the wording of the standard and it would create considerable doubt that the standard provides to employers fair warning of the conduct which it prohibits or requires."), *Phelps Dodge Corp.* v. *Federal Mine Safety and Health Review Comm'n*, 681 F.2d 1189, 1192 (9th Cir. 1982) (recognizing that "the application of a regulation in a particular situation may be challenged on the ground that it does not give fair warning that the allegedly violative conduct was prohibited"); *Kropp Forge Co.* v. *Secretary of Labor*, 657 F.2d 119, 122 (7th Cir. 1981) (refusing to impose sanctions where standard the regulated party allegedly violated "d[id] not provide 'fair warning' of what is required or prohibited"); *Dravo Corp.* v. *Occupational Safety and Health Review Comm'n*, 613 F.2d 1227, 1232-1233 (3rd Cir. 1980) (rejecting agency's expansive interpretation where agency did not "state with  what is meant by the standards [it] ha[d] promulgated" (internal quotation marks omitted; emphasis deleted)).

**60.** Plaintiffs were prejudiced by this sudden and unannounced change of policy since had they known that USCIS read the words "on form I-20" in 8 CFR §

214.2(f)(5)(i) to mean "in SEVIS", they could and would have taken steps to change their nonimmigrant status to visitor for pleasure (B-2) while their applications for change of nonimmigrant status were pending.

**61.** Furthermore, the USCIS's radical new interpretation of 8 CFR § 214.2(f)(5)(i) is in any event not enforceable against the plaintiffs retroactively because: 1) this case is not one of first impression, (the first denials on this ground having apparently been issued in February, 2016); 2) The new rule represents an abrupt departure from well-established practice and not merely an attempt to fill a void; (3) the plaintiffs heavily relied upon the former rule by not applying to change their nonimmigrant status to B-2 or take steps to transfer to a new exchange visitor program ) while their change of nonimmigrant status was pending, in reliance upon the plain language of 8 CFR § 214.2(f)(5)(i); (4) retroactive enforcement of this changed interpretation would heavily burden the plaintiffs in that it would result in a denial of their application for change of nonimmigrant status after their current status expired, making it virtually impossible for them to obtain a legal status in the U.S., and most likely also make it impossible for them to obtain a visa in the future since they are now in violation of their status; and (5) the defendant has no statutory interest in applying its new interpretation despite the reliance of the plaintiffs on the old standard. *New York Telephone Co. v. FCC*, 631 F.2d 1059, 1068 (2d Cir. 1980)

(quoting *Retail, Wholesale & Department Store Union v. NLRB*, 466 F.2d at 380, 390 (D.C. Cir. 1972)).

Wherefore the Court should hold that the defendants did not act in accordance with law by retroactively enforcing upon plaintiffs a radically new interpretation of 8 CFR § 214.2(f)(5)(i) which cannot be reasonably ascertained to mean that they were required to file their applications for change of nonimmigrant status within 30 days of  a program start date in their SEVIS record that hadn't even been finally determined yet  and  directly at odds with its plain language without any notice after approximately 13 years of enforcing the regulation according to its plain and unambiguous meaning and therefore hold unlawful and set aside the defendants decisions denying Plaintiffs Jungyoun Kim and Jin Chae applications for change of nonimmigrant status in File Nos. EAC169075705 and EAC179005675, respectively.

## COUNT III

**62.** 8 CFR § 248.1(b) provides that:

> Timely filing and maintenance of status. Except in the case of an alien applying to obtain V nonimmigrant status in the United States under § 214.15(f) of this chapter, a change of status may not be approved for an alien who failed to maintain the previously accorded status or whose status expired

before the application or petition was filed, except that failure to file before the period of previously authorized status expired may be excused in the discretion of USCIS, and without separate application, where it is demonstrated at the time of filing that:

- **(1)** The failure to file a timely application was due to extraordinary circumstances beyond the control of the applicant or petitioner, and USCIS finds the delay commensurate with the circumstances;
- **(2)** The alien has not otherwise violated his or her nonimmigrant status;
- **(3)** The alien remains a bona fide nonimmigrant; and
- **(4)** The alien is not the subject of removal proceedings under 8 CFR part 240.

**63**. Even if their program start dates were determined by the SEVIS system, which the regulations nowhere provide it is, and not their Forms I-20, as is unambiguously provided in 8 CFR § 214.2(f)(5)(i), nevertheless, the USCIS had the discretion under 8 CFR § 248.1(b) to grant plaintiffs a change of nonimmigrant status.

**64**. Accordingly, if despite the facts and law set forth above, this Court holds that the plaintiffs had a duty to maintain a lawful nonimmigrant status until the program start date set forth in SEVIS, as changed after their application for change of nonimmigrant status was filed, then this Court should remand this matter to USCIS to consider, in its discretion, whether plaintiffs should be granted a change of status to F-1 as applicable, despite their failure to maintain status until the SEVIS program start date. *Yousseffi v. Renaud*, 794 F. Supp. 2d 585, 594 (D. Md. 2011) ("it is apparent from the language and structure of section 248.1(b) that the Secretary of

Homeland Security has discretion, in appropriate cases, to excuse change-of-status applicants who file while their prior status is valid, but subsequently fall out of status. Because this Court only has the authority to address the agency's regulatory interpretations relating to eligibility, the case will be remanded to the USCIS for further proceedings consistent with the eligibility principles articulated in this opinion.").

WHEREFORE the plaintiffs request that in the event that this Court does not grant them the relief sought in Counts I and II of this complaint, that it find that the USCIS's decision in File Nos EAC1690745705 and EAC1790056753, dated May 28, 2016, to be unlawful, and set it aside, as an abuse of discretion, and remand this matter back to the USCIS for further proceedings consistent with the eligibility principles articulated in Count III of this complaint and by the court in *Youseffi v. Renaud.*

Respectfully submitted, this 22   day of December,  2017

/s/ *Michael E. Piston*

Michael E. Piston
MI 002
Attorney at Law
225 Broadway,
Suite 307
New York, NY, 10007
Ph: 646-845-9895
Fax: 206-770-6350
Email: michaelpiston4@gmail.com

24